# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
Civil Action No. 5:22-ct-03445-M-RJ

| | |
|---|---|
| KADEEM KIRK, | ) |
| Plaintiff, | ) |
| v. | ) |
| PRISON STAFF, *et al.*, | ) |
| Defendants. | ) |

## DECLARATION OF JOHN M. SAPPER

I, John M. Sapper, declare the following to be true and correct to the best of my knowledge and belief:

1. I am currently retired from the North Carolina Department of Public Safety ("NCDPS"). I retired from Bertie Correctional Institution ("Bertie Correctional") in April 2022.

2. I first began my career with NCDPS on April 17, 1989, as a Correctional Officer at Yadkin Correctional Center. I was then promoted to a Sergeant in April 1996 before transferring to Piedmont Correctional Institution due to Yadkin Correctional Center's closure in September 1999. I was promoted to Lieutenant on March 1, 2000, at Piedmont Correctional Institution. I was later promoted to Assistant Superintendent at Rowan Correctional Center. In July 2008, I was promoted to Operations Manager for the Eastern Region in Greenville. Lastly, I was promoted to Warden in May 2017 at Bertie Correctional.

3. In my thirty-three (33) years of working for NCDPS, I followed the procedures mandated by NCDPS. I never received a disciplinary action during my career.

4. During the time relevant in Plaintiff's complaint, I was the Warden at Bertie Correctional.

5. As a Warden at Bertie Correctional, I was responsible for all staff and offenders and was responsible for enforcing the applicable policies and guidelines established by NCDPS.

6. Bertie Correctional had procedures for offenders who wish to request protective custody. Typically, offenders would need to request protective custody ("PC") by completing a form requesting PC, where they would include an explanation of why PC was needed. After the form was completed, staff of NCDPS would investigate the offender's request to determine if the offender's claims were valid and protective housing was necessary. The investigation would include gathering statements from the named participants. A protective control committee ("PCC") would then decide whether to grant the requesting offender PC.

7. If a requesting offender informed staff that they were receiving threats from other inmates, the same procedure, explained above, would be followed. Additionally, depending on the situation, senior level staff would review footage and interview other offenders to determine if the allegations made by the requesting offender were true.

8. For Bertie Correctional staff, to properly address a requesting offender's concern for safety, the requesting offender needed to provide: (1) who had threatened the requesting offender, (2) what the threat was, and (3) why the requesting offender believed they had been threatened. Without this information, it was not possible for Bertie Correctional staff to fully investigate the requesting offender's concern, nor could Bertie Correctional staff separate the requesting offender from those threatening them in general population housing.

9. While Plaintiff was incarcerated at Bertie Correctional between 2020 and 2021. I do not recall if I had any conversations with Plaintiff during that time.

10. If Plaintiff would have raised concerns to me either verbally or through a written letter, I would have directed Plaintiff to complete the required PC forms as required by Bertie Correctional procedures. If I did have any information regarding Plaintiff's safety or the safety of other inmates, I would have turned that information over to one of the Associate Wardens at

Bertie Correctional to determine if that information was valid.

11. Moreover, if an offender is in PC, they may request to be removed from PC and to return to the general population. If an inmate does request to be removed from PC, they are required to sign two statements; (1) a statement that the offender themselves is requesting to be removed from PC and (2) a statement stating that the offender no longer fears for his safety.

12. I was aware that Plaintiff requested PC on May 1, 2020.

13. On May 3, 2020, I received a written request from Plaintiff requesting to speak to me regarding concerns for his safety. I promptly responded to Plaintiff that I was forwarding this information to Associate Warden Locklear to determine the appropriate action. As the Warden, I was not in charge of determining the legitimacy of offender requests, which is why I forwarded the information to Associate Warden Locklear.

14. After reviewing the incident report, I was aware that on May 12, 2020, Plaintiff signed two statements. Plaintiff requested to be removed from PC and signed a statement that he no longer had protective needs. Plaintiff was returned back to the general population on May 14, 2020.

15. I had no knowledge or reason to doubt Plaintiff's signed statement that he no longer needed PC. I have no other direct knowledge of the incident alleged in Plaintiff's complaint.

16. At no time was I aware of who had allegedly threatened Plaintiff nor did Plaintiff inform me of who had allegedly threatened him.

Respectfully submitted this the 18 day of September 2024.

*John M. Sapper* (signature)
John M. Sapper

2