IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03315-M-RJ

| | |
|---|---|
| KADEEM KIRK, | ) |
| Plaintiff, | ) **DEFENDANTS JOHN M. SAPPER,** |
| | ) **VICTOR LOCKLEAR, AND** |
| v. | ) **PATRICIA WHITE'S** |
| | ) **MEMORANDUM IN SUPPORT OF** |
| PRISON STAFF, *et al.*, | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |
| Defendants. | ) |

NOW COME Defendants Warden John M. Sapper ("Warden Sapper"), Warden Victor Locklear ("Warden Locklear"), and Patricia White ("Coordinator White") (collectively, "Defendants"), by and through undersigned counsel, and hereby submits this brief in support of its Motion for Summary Judgment filed in this matter.

## STATEMENT OF CASE

Plaintiff Kadeem Kirk ("Plaintiff"), proceeding *pro se*, filed his Complaint on August 17, 2022 attempting to assert claims pursuant to 42 U.S.C. § 1983. (D.I. 1.) In the Complaint, Plaintiff claims that Defendants violated his Eighth Amendment rights in connection with an incident that occurred at Bertie Correctional Institution ("Bertie Correctional"). On April 14, 2023, the Defendants waived service and answer Plaintiff's complaint on June 12, 2023. (D.I. 17, 25.) Fact discovery ended on April 29, 2024. (D.I. 56.)

On August 8, 2024, the Court granted Defendant's motion to extend the filing of dispositive motions until September 26, 2024. (D.I. 69.) Defendants now timely file their Motion for Summary Judgment.

1

# STATEMENT OF MATERIAL FACTS

## I. BERTIE CORRECTIONAL'S PROCEDURES FOR REQUEST PROTECTIVE CUSTODY

Offenders at Bertie Correctional may request Protective Custody ("PC"). PC is the reassignment of an offender from the general population housing to confinement in separate secure housing to protect an offender from injury or threat of harm by others. If an offender is requesting PC, they must submit a written form explaining why PC is required. For Bertie Correctional staff to properly address a requesting offender's concern for safety, the requesting offender needs to provide: (1) who had threatened the requesting offender, (2) what the threat was, and (3) why the requesting offender believed they had been threatened.

After the requesting offender submits a form requesting PC, the requesting offender will be placed in Restrictive Housing for Administrative Purposes ("RHAP") while a Control Investigation is conducted. A staff member from the requesting offender's housing unit would conduct a Control Investigation by gathering statements from named participants to determine the credibility and validity of the requesting offender's request. The information gathered during the Control Investigation will then be submitted to a facility control committee ("FCC") to decide whether to grant the requesting offender PC.

If a requesting offender is in PC, they may request to be removed from PC and returned to the general population. If an offender does request to be removed from PC, they must sign two statements: (1) a statement that the offender themselves is requesting to be removed from PC and (2) a statement stating that the offender no longer fears for his safety.

## II. PLAINTIFF'S ALLEGED INCIDENT

Plaintiff submitted a request for PC and was placed in RHAP on May 1, 2020, while a Control Investigation into Plaintiff's claims occurred. Plaintiff's request for PC failed to provide

the names of those who had threatened him or why Plaintiff felt threatened. On May 3, 2020, Plaintiff wrote to Warden Sapper requesting a chance to speak to him regarding safety concerns. Warden Sapper responded to Plaintiff informing him that he was forwarding the information to Associate Warden Locklear to determine the appropriate action because Warden Sapper was not responsible for determining the legitimacy of offender requests.

Warden Locklear investigated the allegations in Plaintiff's letter by speaking to staff who indicated that Plaintiff's concerns had been addressed and that none of Plaintiff's allegations were credible. Warden Locklear also reminded Plaintiff that he must provide the names of the offenders threatening him.

On May 12, 2020, Plaintiff met with Bertie Correctional's FCC, which included Coordinator White, to discuss Plaintiff's request for PC. At the time, the FCC committee had not received any additional information or evidence substantiating Plaintiff's claims of threatened assault. Plaintiff continues to refuse to provide the names of offenders who had allegedly threatened to harm him. During the FCC meeting, Plaintiff was informed that he could stay in PC control housing until there was space available in a different correctional institution for him to move or he could return to the general population.

Plaintiff became irate with the FCC and stated that he would not stay in PC control housing. The FCC further explained to Plaintiff that they could only ensure his safety by keeping Plaintiff in PC control housing. Without the names of the offenders who allegedly threatened Plaintiff, the FCC could not separate or take any measure to protect Plaintiff in general population housing. However, Plaintiff had complete discretion and control to decide to return the general population housing.

3

Case 5:22-ct-03315-M-RJ     Document 75     Filed 09/26/24     Page 3 of 11

Plaintiff chose to return to the general population housing even though he was informed by the FCC that they could not ensure his safety from his vague, alleged threat. Plaintiff signed two statements that same day, May 12, 2020, which stated that (1) Plaintiff was requesting to be removed from PC; placed in the general population because he no longer feared for his life; and relinquished the state from any and all responsibility for his life; and (2) Plaintiff acknowledged that he assumed all risks involved; he freely chose to return to general population housing; and he would not hold the State responsible for any special protective needs.

Pursuant to Plaintiff's decision, Plaintiff was returned to general population housing on May 14, 2020, where he was ultimately assaulted.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the record, taken as a whole, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although the facts and all reasonable inferences must be viewed in the light most favorable to the plaintiff at the summary judgment stage, the Court does not have to accept as true a plaintiff's self-serving or unsubstantiated allegations that are contradicted by the record evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). When the moving party has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted).

Plaintiff's failure-to-protect claim under 42 U.S.C. § 1983 is without any factual support in the record and rests solely upon unsubstantiated allegations that Defendant Minton was

deliberately indifferent to Plaintiff's safety when she was assaulted by Albright on February 13, 2021. As a result, there is no genuine issue of material fact to be decided by a factfinder and Defendants are entitled to summary judgment on Plaintiff's failure-to-protect claim.

## II. PLAINTIFF'S FAILURE TO PROTECT CALIMS FAIL ON THE MERITS AND ON THE BASIS OF QUALIFIED IMMUNITY.

### a. Defendants Sapper, Locklear, and White Did Not Disregard An Excessive Risk to Plaintiff's Safety.

A failure to protect claim requires proof of two elements to establish the deprivation of a constitutional right. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977 (1994); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 721-723 (4th Cir. 2010). First, Plaintiff must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury." *Brow*n, 612 F.3d at 723. Defendants do not contest that Norman can meet this element. Second, Plaintiff must show that Case and Hollingsworth had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id*. (citations omitted). Norman can establish "deliberate indifference" by showing that the Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837, 114 S.Ct. at 1979. Deliberate indifference is "a very high standard," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), which requires Plaintiff introduce evidence that Defendants had actual knowledge of an excessive risk to his safety. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Notably, Defendants must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *Rich v. Bruce*, 129 F.3d 336, 338–40 (4th Cir.1997). Plaintiff cannot meet his burden in this case.

Where an attack occurs without notice or provocation, courts have found no viable failure to protect claims. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary

5

judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]"); *Holiday v. Crushink*, 2020 WL 1486808 at * 7 (M.D. Al. 2020) (unpublished), *report and recommendation adopted*, 2020 WL 1486778 (recommending dismissal of failure to protect claim where record established that the altercation occurred without notice or provocation but rather "a sudden, isolated incident.").

While Plaintiff claims Defendants knew of the threat because of his grievance, his unsupported conclusion that Defendants had reason to believe there was a threat does not create a genuine issue of material fact. *See Morris v. Collins*, 371 Fed. Appx. 509, 511 (5th Cir. 2010) (unpublished) (finding that the plaintiff inmate's "conclusional assertion that [the defendant officer] heard the alleged threat from [the inmate who assaulted the plaintiff inmate] is not within [the plaintiff inmate's] personal knowledge and, therefore, does not constitute competent summary judgment evidence"). At the time of the grievances and through this lawsuit, Plaintiff still fails to provide any evidence that there was a potential imminent threat or who the threat was coming from. Simply telling the Defendants that he believed there was a risk of an assault, does not meet the standard of showing that Defendants knew of an "excessive risk."

Most notably, Plaintiff signed two statements releasing him back into general population housing. The May 12, 2020, signed statements including that (1) Plaintiff requested to be removed from PC; placed in the general population because he no longer feared for his life; and relinquished the state from any and all responsibility for his life; and (2) Plaintiff acknowledged that he assumed all risks involved; he freely chose to return to general population housing; and <u>he would not hold the State responsible for any special protective needs.</u> Defendants only adhered to the requests

6

from Plaintiff after providing him with two housing options. Prior to Plaintiff's decision and signing the request to return to general population housing, Defendants (1) responded to Plaintiff's grievances, (2) conducted a review of the limited facts provided, (3) spoke to staff that interacted with Plaintiff regularly, (4) repeatedly requested additional information from Plaintiff, (5) informed Plaintiff that more information would be required in order to go to PC, and (6) provided Plaintiff with two housing options. After all the above steps were completed, Plaintiff was again informed that there was not any evidence of a threat, and that more information would be required.

As Plaintiff has failed to demonstrate that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety" *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (internal citations omitted), his failure-to-protect claim must be dismissed. *See Leatherwood v. Cohen,* 2011 WL 4435815 at * 9 (D.S.C. 2011) (unpublished) (finding that Plaintiff's Complaint does not allege any facts to demonstrate that any Defendants were deliberately indifferent because there was no evidence that Defendants drew or could have actually drawn the inference that there was a substantial or excessive risk that another inmate could seriously harm Plaintiff); *Fennell v. Williams*, 2011 WL 251464 at * 5 (D. S.C. 2011) (unpublished) (dismissing deliberate indifference claim where there was "no evidence that Defendants knew of a specific risk of harm to him and consciously disregarded it."); *Brooks v. Bufford*, 2011 WL 2119281 at * 7 (D. S.C. 2011) (unpublished) ("[o]ther than the Plaintiff's conclusory allegations, the Plaintiff offers no evidence that the Defendants knew or should have known that the other inmate posed a risk to the Plaintiff's safety.")

### b. Defendants Are Entitled to Qualified Immunity On The Failure To Protect Claim.

Because there is no underlying constitutional violation of Plaintiff's rights, Defendants are entitled to qualified immunity.

Law enforcement officers, including correctional officers, performing discretionary functions are entitled to qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officers are entitled to qualified immunity "if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis added). The purpose of qualified immunity is to "remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of facts to a jury." *Slattery*, 939 F.2d at 216 (emphasis added). This standard grants immunity from civil liability to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986).

In evaluating qualified immunity, a court initially may determine whether that the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001). In the case before this Court, Plaintiff has not established a violation of her constitutional rights.

The protection an inmate is afforded against other inmates is a condition of confinement subject to the strictures of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The United States Court of Appeals for the Fourth Circuit explained the standard required for a Plaintiff to survive summary judgment in a case alleging unconstitutional prison conditions: "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a Plaintiff must show both: " '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

The first element, a serious deprivation of a basic human need, requires that the deprivation be "objectively sufficiently serious.' " *Strickler*, 989 F.2d at 1379 (quoting *Wilson*, 501 U.S. at 298) (emphasis in original). For a claim based on a failure to prevent harm, the inmate must show that she is incarcerated under conditions posing a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

The second element, deliberate indifference to confinement conditions, requires that Defendant Minton "subjectively ... 'act with a sufficiently culpable state of mind.' " *Strickler*, 989 F .2d at 13 79. For conditions of confinement cases, that state of mind is one of "deliberate indifference" to inmate health or safety. *Wilson*, 501 U.S. at 302-303.

Further, merely negligent failure to protect an inmate from attack does not justify liability under section 1983. *Davidson v. Cannon*, 474 U.S. 344 (1986). A correctional officer must be deliberately indifferent to a known danger before a court can conclude that her failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional tort. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). The known risk of injury must be " 'a strong likelihood, rather than a mere possibility' " before a correctional officer's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

In this case, even assuming that Defendants failed to protect Plaintiff from the assault, they are still entitled to qualified immunity because Plaintiff's right to be free of that assault, under the facts of this case, was not clearly established. Under the specific facts of this case, it cannot be said that "every reasonable official" would have understood that providing Plaintiff with two housing options and ultimately abiding by his signed request to return to the general population housing would be a violation of his rights. *Ashcroft v. al- Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). Plaintiff failed to provide any evidence that would suggest that Defendants or

9

any "reasonable official" could have protected Plaintiff from a surprise attack when Plaintiff failed to tell the officers (1) the name of the alleged threat, (2) where that individual was house, or (3) why he believe there was a threat.

As a result, Defendants are entitled to qualified immunity because there is no evidence that they knew of a viable threat, other than Plaintiff's vague statements that he was at risk. *See Danser* 772 F.3d at 350 ("[b]ecause the record lacks any evidence that Boyd knew that Gustin posed a particular danger to Danser, the record as a matter of law fails to show that Boyd must have appreciated that his act of leaving Danser and Gustin together in an unsupervised area created an excessive risk to Danser's safety."). Additionally, Plaintiff ultimately signed statements agreeing to return to general population and that he would not hold the State responsible for any special protective needs. Accordingly, no reasonable officer could have determined that there was a viable threat that Plaintiff needed protection from.

## CONCLUSION

For the reasons and authorities cited in this memorandum of law, Defendants respectfully requests that the Court grant their Motion for Summary Judgment on Plaintiff's failure-to-protect claim.

Respectfully submitted, this the 26th day of September, 2024.

/s/ Caitlin T. Augerson
Caitlin T. Augerson, N.C. State Bar No. 57811
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 721-3600
Facsimile:  (336) 721-3660
Email: Caitlin.Augerson@wbd-us.com

*Attorneys for Defendants John M. Sapper, Victor Locklear, and Patricia White*

# CERTIFICATE OF SERVICE

This is to certify that on September 26, 2024, a copy of the foregoing **DEFENDANTS JOHN M. SAPPER, VICTOR LOCKLEAR, AND PATRICIA WHITE'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using CM/ECF system.

It is hereby further certified that on September 26, 2024, a copy of the foregoing **DEFENDANTS JOHN M. SAPPER, VICTOR LOCKLEAR, AND PATRICIA WHITE'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served by U.S. First-Class Mail on the following non-CM/ECF participant:

Kadeem Kirk
1423517
Harnett Correctional Institution
P.O. Box 1569
Lillington, NC 27546

*Pro se* Plaintiff

/s/ *Caitlin T. Augerson*
Caitlin T. Augerson, N.C. State Bar No. 57811
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Caitlin.Augerson@wbd-us.com

*Attorneys for Defendants John M. Sapper, Victor Locklear, and Patricia White*