IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03315-M-RJ

KADEEM KIRK,

        Plaintiff,

v.

PRISON STAFF, et al.,

        Defendants.

ORDER

This cause is before the court on plaintiff's motions seeking a stay, Mot. [D.E. 85], an order, Mot. [D.E. 86], a protective order, Mot. [D.E. 89], and a hearing, Mot. [D.E. 90], and defendants' motion for summary judgment, Mot. [D.E. 72]. As discussed below, the court denies plaintiff's motions and denies defendants' motion for summary judgment without prejudice.

Relevant Procedural History:

On August 17, 2022, Kadeem Kirk ("plaintiff"), a state inmate, filed *pro se* a complaint under 42 U.S.C. § 1983. See [D.E. 1]. In response to an order of deficiency, Order [D.E. 3], plaintiff filed the operative complaint, see Compl. [D.E. 5], and moved to proceed without prepayment of fees, Mot. [D.E. 6], which the court granted, Order [D.E. 10].

On February 13, 2023, the court, *inter alia*, conducted its initial review and allowed Eighth Amendment failure-to-protect claims pursuant to events surrounding a May 14, 2020, stabbing incident at Bertie C.I. to proceed against Victor Locklear, John M. Sapper, and Patricia White (collectively, "defendants"), but dismissed other claims and defendants. See Order [D.E. 14].

On June 12, 2023, defendants answered the complaint. Answer [D.E. 25].

On December 7, 2023, plaintiff moved through counsel to compel discovery, see Mot. [D.E. 40], and the court granted the motion on December 28, 2023, see Order [D.E. 46].

On April 22, 2024, the court awarded plaintiff attorney's fees. Order [D.E. 57].

On July 22, 2024, plaintiff filed a motion to stay. Mot. [D.E. 66].

On August 16, 2024, the court denied the motion to stay. Order [D.E. 70].

On September 26, 2024, defendants filed a motion for summary judgment, Mot. [D.E. 72], a statement of material facts [D.E. 73], an appendix [D.E. 74], and a memorandum [D.E. 75].

On September 27, 2024, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion, the consequences of failing to respond, and the response deadline. [D.E. 76]. Also on that date, defendants moved for a protective order, Mot. [D.E. 77], which the court subsequently granted, see Order [D.E. 80].

On November 7, 2024, as Exhibit 6 to their appendix, defendants filed a redacted portion of Bertie C.I. Standard Operating Procedures. See [D.E. 81] (entitled, "Offender Restrictive Housing for Control/Administrative Purposes").

On January 27, 2025, plaintiff filed a response in opposition. Pl.'s Resp. [D.E. 84].

On April 2, 2025, plaintiff filed his instant motions seeking a stay and an order, see Mot. [D.E. 85]; Mot. [D.E. 86], which defendants oppose, see [D.E.87, 88].

On April 28, 2025, plaintiff filed the instant motion for a protective order. Mot. [D.E. 89].

On May 1, 2025, plaintiff filed his instant motion for a hearing. Mot. [D.E. 90].

Plaintiff's Motions:

Plaintiff's April 2, 2025, motions respectively seek to stay any decision on defendants' motion for summary judgment, see Mot. [D.E. 85], and an order directing Harnett C.I. Warden

Cathy Judge to personally give him his legal documents, see Mot. [D.E. 86]. In support, plaintiff asserts, *inter alia*: he was placed in segregation on March 24, 2025, as harassment for filing this action; he was denied access to legal documents related to this action by Harnett C.I. staff, leading to him "not being able to show supporting facts"; his letter to the clerk explained "that documents handed over by the defendant in the discovery [are] not the original copies and have been changed and altered"; defendants are "doing everything to cover up what happened"; and, contra the attached property inventory, he does not have possession of his legal mail. See [D.E. 85, 86].

In support of his April 28, 2025, "motion for protective order," he asserts: he was moved from Harnett C.I. to Central Prison; he was "sexually touched by another inmate" and filed a Prison Rape Elimination Act ("PREA") claim; "the Institution is up under [sic] a 90 day no retaliation against" him, but he is "being reprisal [sic] against by Harnett [C.I.] program Warden not only because of the PREA" claim he filed, but also "due to [him] reporting to this court that [his] legal mail was not being given to [him] and that Asst. Warden Griggs worked at Bertie [C.I.] at the time [he] was assaulted"; Central Prison is a close custody prison, but he is a medium custody inmate; the state has not been treating him fairly; and he fears for his life in close custody institutions since being assaulted at Bertie C.I. on May 14, 2020. See Mot. [D.E. 89] at 1. For relief, he seeks "a protective order" preventing his transfer to close custody institutions, including Bertie C.I. Id.

In support of his May 1, 2025, "motion for hearing," he states, *inter alia*, that: he is still in segregation at Central Prison; he believes his outgoing and incoming mail is being held; defendants are "still trying to cover up what they did"; criminal charges need to be filed against defendants for altering documents and "conspiracy to attempted murder or attempted murder due to plaintiff being stabbed over 20 times" and defendants' failure to notify law enforcement, despite his

3

requests; and a "judgment by default against the defendants needs to be entered for the relief demanded in the complaint." Mot. [D.E. 90] at 1–2. He asks the court to "make the agency show this court that [he is] safe and alive and healthy." Id. at 2.

Plaintiff subsequently informed the court that he transferred to Mountain View C.I. on May 8, 2025, see [D.E. 92], and publicly available information lists his custody classification as medium and control status as regular population, see N.C. Dept. of Adult Correction, Offender Pub. Info, https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1423517&searchOffenderId=1423517&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (search by inmate number) (visited July 3, 2025).

Plaintiff's subsequent filing also complains that 1) he did not receive defendants' responses to his April 2, 2025, motions, 2) he still lacks legal documents last possessed at Harnett C.I., and 3) he believes he is being transferred to prevent him from meeting court deadlines. See [D.E. 93].

Warden Cathy Judge is not a defendant in this action and the various purported issues arising in 2025 at Harnett C.I., Central Prison, and Mountain View C.I. are factually distinct and unrelated to plaintiff's surviving claims regarding a May 14, 2020, stabbing incident at Bertie C.I. See Fed. R. Civ. P. 18 (discussing joinder of claims); Fed. R. Civ. P. 20(a)(2) (discussing joinder of defendants); see also George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits[.]"). Thus, to the extent plaintiff seeks to raise new claims against new defendants, he instead must do so in a separate action.

Next, because plaintiff already responded to defendants' motion for summary judgment on January 27, 2025, well before the alleged issues with legal documents arose at Harnett C.I. in March of 2025, there were no deadlines to meet, and plaintiff fails to show the need for a stay.

4

See Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970) (outlining showings required by party seeking a stay); see also Int'l Refugee Assistance Project v. Trump, 323 F. Supp. 3d 726, 731 (D. Md. 2018) (noting, "the burden of showing the necessity for a stay rests on the moving party").

To the extent plaintiff seeks a transfer, non-transfer, or a change in custody classification, these requests fail for the reasons discussed in the order conducting initial review. See Order [D.E. 14] at 6–7 (citing, *inter alia*, Meachum v. Fano, 427 U.S. 215, 225 (1976); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994); O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991)).

To the extent plaintiff seeks copies of prior filings in this action, a *pro se* litigant is responsible for maintaining his own legal records, and plaintiff is not entitled to copies at the Government's expense. See United States v. Gallo, 849 F.2d 607, 1988 WL 60934, at *1 (4th Cir. May 31, 1988) (per curiam) (unpublished table decision). As necessary, plaintiff instead may file a record system request through the Clerk's Office or use the Public Access to Court Electronic Records ("PACER") program. See 28 U.S.C.A. § 1914, Judicial Conference Schedule of Fees, at ¶4; http://www.nced.uscourts.gov/pdfs/CopyRequestInstructions.pdf (last visited July 3, 2025).

Accordingly, the court DENIES plaintiff's various motions [D.E. 85, 86, 89, 90].

### Defendants' Motion for Summary Judgment:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving

5

party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Defendants' motion for summary judgment fails for several reasons. First, defendants' memorandum fails to address plaintiff's claims against defendants in their official capacities. See Compl. [D.E. 5] at 3–4, 8 (suing in both official and individual capacities and seeking injunctive relief); Answer [D.E. 25] at 4 (defending against official capacity claims as to money damages); Pl.'s Mem. Attach. [D.E. 41-2] (noting plaintiff sued defendants in their official capacities); see also Doe v. Univ. of N. Carolina Sys., 133 F.4th 305, 318 (4th Cir. 2025). Notably, defendants' memorandum also regularly misidentifies the parties. See Defs.' Mem. [D.E. 75] at 4–5 (identifying plaintiff as "she" or "Norman" and defendants as "Minton," "Albright," and "Case and Hollingsworth"); id. at 8–9 (identifying plaintiff as "her" and a defendant as "Minton").

Next, defendants' statement of material facts and declarations, without explanation, mix acronyms for the Bertie C.I. Protective Control Committee ("PCC") and Facility Control Committee ("FCC"). Compare Defs.' Stmt. Mat. Facts [D.E. 73] at ¶¶4, 9, 10 (naming the FCC), and Defs.' App., Ex. 2, White Decl. [D.E. 74-2] at ¶¶3, 8–10 (declaring that White conducts the FCC, and plaintiff had a May 12, 2020, meeting with the FCC), and id., Ex. 3, Locklear Decl.

6

[D.E. 74-3] at ¶¶5, 10 (declaring: when Bertie C.I. receives a request for protective custody ("PC"), "Control Investigation" information is then submitted to the FCC to "determine if there is a legitimate need or concern for the requesting offender's safety"; and, "If there is a legitimate need for PC, the FCC will grant the requesting offender PC"), with Defs.' Stmt. Mat. Facts [D.E. 73] at ¶¶8, 11 (naming the PCC), and Defs.' App., Ex. 1, Sapper Decl. [D.E. 74-1] at ¶6 (declaring, after Bertie C.I. staff gather statements for offender's claims requesting protective custody, "a protective control committee ('PCC') would then decide whether to grant" protective custody).

The record also is incomplete. Although defendants' filings indicate that Bertie C.I. regulations require recording comments and recommendations during protective control investigations, see generally [D.E. 81], and defendants state that "a Control Investigation was conducted into Plaintiff's allegations," Defs.' Stmt. Mat. Facts [D.E. 73] at ¶5, plaintiff correctly states that the record presently lacks documentation of a Control Investigation, see Pl.'s Stmt. Mat. Facts. [D.E. 84-2] at ¶4; see also Martin v. Weber, No. CV DLB-22-922, 2024 WL 1329295, at *9–10 (D. Md. Mar. 28, 2024) (discussing absence of documentation of an investigation).

The court also notes that plaintiff's May 1, 2020, request for protective housing, and both documents signed by plaintiff on May 12, 2020, one entitled "removal from protective housing," and the other entitled "inmate declaration of nonprotective needs," are all compiled onto a single page within the record. See Defs.' App., Ex. 5 [D.E. 74-5] at 25. Plaintiff declares he "wrote the names of the inmates threatening him" on his May 1, 2020, request for protective housing, see [D.E. 84-4] at ¶4, whereas defendants state that plaintiff's request "did not specify the names of those who were allegedly threatening him or any substantive evidence of the allegations," Defs.' Stmt. Mat. Facts [D.E. 73] at ¶5. This odd pagination presently lends some credence to plaintiff's

7

claim – "that documents handed over by the defendant in the discovery [are] not the original copies and have been changed and altered." See [D.E. 85] at 1.

Considering this incomplete record, and viewing the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, issues of material fact now preclude entry of summary judgment for defendants, Anderson, 477 U.S. at 247–48; see Danser v. Stansberry, 772 F.3d 340, 346–47 (4th Cir. 2014); cf. Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024), and defendants also are not entitled to a finding of qualified immunity on summary judgment, see Tolan v. Cotton, 572 U.S. 650, 655–56 (2014).

Conclusion:

In sum, the court: DENIES plaintiff's various motions [D.E. 85, 86, 89, 90]; and DENIES WITHOUT PREJUDICE defendants' motion for summary judgment [D.E. 72].

Defendants, however, shall have until August 1, 2025, to move for summary judgment with a corrected brief and to supplement the record, under seal, if necessary, with complete copies of the multiple documents now compiled on a single page at Defs.' App., Ex. 5 [D.E. 74-5] at 25, and full records of any protective control investigation, including comments and recommendations.

If defendants so move, plaintiff shall have until August 25, 2025, to file any response, and defendants will have until September 9, 2025, to reply. Further extensions of time are disfavored.

If defendants do not file a renewed motion for summary judgment, the court will refer the matter to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference.

SO ORDERED this 7Th day of July, 2025.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge