IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03315-M-RJ

| | |
|---|---|
| KADEEM KIRK, ) | |
| ) | |
| Plaintiff, ) | **DEFENDANTS JOHN M. SAPPER,** |
| ) | **VICTOR LOCKLEAR, AND** |
| v. ) | **PATRICIA WHITE'S** |
| ) | **MEMORANDUM OF LAW IN** |
| PRISON STAFF, *et al.*, ) | **SUPPORT OF AMENDED MOTION** |
| ) | **FOR SUMMARY JUDGMENT** |
| Defendants. ) | |

NOW COME Defendants Warden John M. Sapper ("Warden Sapper"), Warden Victor Locklear ("Warden Locklear"), and Patricia White ("Coordinator White") (collectively, "Defendants"), by and through undersigned counsel, and hereby submit this brief in support of their Amended Motion for Summary Judgment filed in this matter.

## STATEMENT OF CASE

Plaintiff Kadeem Kirk ("Plaintiff"), proceeding *pro se*, filed his Complaint on August 17, 2022, attempting to assert claims pursuant to 42 U.S.C. § 1983. (D.E. 1.) In the Complaint, Plaintiff claims that Defendants violated his Eighth Amendment rights in connection with an incident that occurred at Bertie Correctional Institution ("Bertie Correctional"). On April 14, 2023, Defendants waived service and answered Plaintiff's complaint on June 12, 2023. (D.E. 17, 25.) Fact discovery ended on April 29, 2024. (D.E. 56.)

On August 8, 2024, the Court granted Defendants' motion to extend the filing of dispositive motions until September 26, 2024. (D.E. 69.) Defendants now timely file their Amended Motion for Summary Judgment.

1

# STATEMENT OF MATERIAL FACTS

## I. BERTIE CORRECTIONAL'S PROCEDURES FOR REQUESTING PROTECTIVE CUSTODY

Offenders at Bertie Correctional may request Protective Custody ("PC"). PC is the reassignment of an offender from the general population housing to confinement in separate secure housing to protect an offender from injury or threat of harm by others. If an offender is requesting PC, he must submit a written form explaining why PC is required. For Bertie Correctional staff to properly address a requesting offender's concern for safety, the requesting offender needs to provide: (1) the identity of the individual who threatened the requesting offender, (2) a description of the threat, and (3) information about why the requesting offender believed he was threatened.

After the requesting offender submits a form requesting PC, the requesting offender will be placed in Restrictive Housing for Administrative Purposes ("RHAP") while an investigation[1] is conducted. A staff member from the requesting offender's housing unit would conduct an investigation by gathering statements from named participants to determine the credibility and validity of the requesting offender's request. The information gathered during the investigation will then be submitted to a facility classification committee[2] ("FCC") to decide whether to grant the requesting offender PC.

---

[1] This investigative process became known as a "Control Investigation" in 2021. Prior to 2021, there was not a specific term for the investigative process.

[2] Exhibits may reference FCC and/or PCC. PCC refers to the protective control committee. The FCC and the PCC perform the same function. However, the PCC refers to the committee that meets with offenders who are already in protective custody and are requesting to stay there, while the FCC refers to the committee that meets with offenders who are seeking to move to protective custody. In the regular course of prison operations, the terms are used interchangeably by the parties. In this context, PCC should be understood as a reference to the FCC.

If a requesting offender is in PC, they may request to be removed from PC and returned to the general population. If an offender does request to be removed from PC, they must sign two statements: (1) a statement that the offender themselves is requesting to be removed from PC and (2) a statement stating that the offender no longer fears for his safety.

II.     **PLAINTIFF'S ALLEGED INCIDENT**

Plaintiff submitted a request for PC and was placed in RHAP on May 1, 2020, while an investigation into Plaintiff's claims occurred. Plaintiff's request for PC failed to provide the names of the offenders who had threatened him or information about why Plaintiff felt threatened. On May 3, 2020, Plaintiff wrote to Warden Sapper requesting a chance to speak to him regarding safety concerns. Warden Sapper responded to Plaintiff informing him that he was forwarding the information to Associate Warden Locklear to determine the appropriate action.

Warden Locklear investigated the allegations in Plaintiff's letter by speaking to staff who indicated that Plaintiff's concerns had been addressed and that none of Plaintiff's allegations were credible. Warden Locklear also reminded Plaintiff that he must provide the names of the offenders threatening him.

On May 12, 2020, Plaintiff met with Bertie Correctional's FCC, which included Coordinator White, to discuss Plaintiff's request for PC. At the time, the FCC had not received any additional information or evidence substantiating Plaintiff's claims of threatened assault. Plaintiff continued to refuse to provide the names of offenders who allegedly threatened to harm him. During the FCC meeting, Plaintiff was informed that he could stay in PC control housing until there was space available in a different correctional institution for him to move or he could return to the general population.

Plaintiff became irate with the FCC and stated that he would not stay in PC control housing. The FCC further explained to Plaintiff that they could only ensure his safety by keeping Plaintiff in PC control housing. Without the names of the offenders who allegedly threatened Plaintiff, the FCC could not separate or take any measure to protect Plaintiff in general population housing. With this understanding, Plaintiff had the option to return to general population housing.

Plaintiff chose to return to the general population housing even though he was informed by the FCC that they could not ensure his safety from a vaguely alleged threat. Plaintiff signed two statements that same day, May 12, 2020, which stated that (1) Plaintiff was requesting to be removed from PC; placed in the general population because he no longer feared for his life; and relinquished the state from any and all responsibility for his life; and (2) Plaintiff acknowledged that he assumed all risks involved; he freely chose to return to general population housing; and he would not hold the State responsible for any special protective needs.

Pursuant to Plaintiff's decision, Plaintiff returned to general population housing on May 14, 2020, where he was ultimately assaulted.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the record, taken as a whole, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although the facts and all reasonable inferences must be viewed in the light most favorable to the plaintiff at the summary judgment stage, the Court does not have to accept as true a plaintiff's self-serving or unsubstantiated allegations that are contradicted by the record evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). When the moving party has carried its burden under Rule 56(c), "its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted).

Plaintiff's failure-to-protect claim under 42 U.S.C. § 1983 is without any factual support in the record and rests solely upon unsubstantiated allegations. As a result, there is no genuine issue of material fact to be decided by a factfinder and Defendants are entitled to summary judgment on Plaintiff's failure-to-protect claim.

## II. PLAINTIFF'S FAILURE-TO-PROTECT CLAIM FAILS ON THE MERITS

### A. Defendants Sapper, Locklear, and White Did Not Disregard an Excessive Risk to Plaintiff's Safety.

A failure-to-protect claim requires proof of two elements to establish the deprivation of a constitutional right. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977 (1994); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 721-723 (4th Cir. 2010). First, Plaintiff must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury." *Brow*n, 612 F.3d at 723. Second, Plaintiff must show that Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id*. (citations omitted). Plaintiff must establish "deliberate indifference" by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837, 114 S.Ct. at 1979. Deliberate indifference is "a very high standard," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), which requires Plaintiff introduce evidence that Defendants had actual knowledge of an excessive risk to his safety. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Notably, Defendants must have been aware of facts from which the inference

5

could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *Rich v. Bruce*, 129 F.3d 336, 338–40 (4th Cir.1997). Plaintiff cannot meet his burden in this case.

Where an attack occurs without notice or provocation, courts have found no viable failure-to-protect claims. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]"); *Holiday v. Crushink*, 2020 WL 1486808 at * 7 (M.D. Al. 2020) (unpublished), *report and recommendation adopted*, 2020 WL 1486778 (recommending dismissal of failure-to-protect claim where record established that the altercation occurred without notice or provocation but rather "a sudden, isolated incident.").

While Plaintiff claims Defendants knew of the threat because of his grievance, his unsupported conclusion that Defendants had reason to believe there was a threat does not create a genuine issue of material fact. *See Morris v. Collins*, 371 Fed. Appx. 509, 511 (5th Cir. 2010) (unpublished) (finding that the plaintiff inmate's "conclusional assertion that [the defendant officer] heard the alleged threat from [the inmate who assaulted the plaintiff inmate] is not within [the plaintiff inmate's] personal knowledge and, therefore, does not constitute competent summary judgment evidence"). Neither at the time he submitted a grievance nor in the allegations of this lawsuit has Plaintiff provided any evidence that there was a potential imminent threat or the identity of anyone who threatened him. Merely telling Defendants that Plaintiff believed there was a risk of an unspecified assault by an unknown aggressor does not meet the standard of showing that Defendants knew of an "excessive risk."

Most notably, Plaintiff signed two statements releasing him back into general population housing. The May 12, 2020, signed statements demonstrate that (1) Plaintiff requested to be removed from PC; placed in the general population because he no longer feared for his life; and relinquished the State from any and all responsibility for his life; and (2) Plaintiff acknowledged that he assumed all risks involved; he freely chose to return to general population housing; and <u>he would not hold the State responsible for any special protective needs</u>. Defendants adhered to Plaintiff's requests after providing him with two housing options. Prior to Plaintiff's decision and signing the request to return to general population housing, Defendants (1) responded to Plaintiff's grievances, (2) conducted a review of the limited facts provided, (3) spoke to the staff that interacted with Plaintiff regularly, (4) repeatedly requested additional information from Plaintiff, (5) informed Plaintiff that more information would be required in order to go to PC, and (6) provided Plaintiff with two housing options. After all the above steps were completed, Plaintiff was again informed that there was not any evidence of a threat, and that more information would be required to grant his request for PC.

As Plaintiff has failed to demonstrate that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety" *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (internal citations omitted), his failure-to-protect claim must be dismissed. *See Leatherwood v. Cohen,* 2011 WL 4435815 at * 9 (D.S.C. 2011) (unpublished) (finding that Plaintiff's Complaint does not allege any facts to demonstrate that any Defendants were deliberately indifferent because there was no evidence that Defendants drew or could have actually drawn the inference that there was a substantial or excessive risk that another inmate could seriously harm Plaintiff); *Fennell v. Williams*, 2011 WL 251464 at * 5 (D. S.C. 2011) (unpublished) (dismissing deliberate indifference claim where there was "no evidence that Defendants knew of a specific risk of harm to him and

consciously disregarded it."); *Brooks v. Bufford*, 2011 WL 2119281 at * 7 (D. S.C. 2011) (unpublished) ("[o]ther than the Plaintiff's conclusory allegations, the Plaintiff offers no evidence that Defendants knew or should have known that the other inmate posed a risk to the Plaintiff's safety.")

**III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY REGARDING THE 42 U.S.C. 1983 CLAIMS BROUGHT AGAINST THEM IN THEIR INDIVIDUAL CAPACITIES**

**A. Overview of Qualified Immunity.**

A court ruling on a qualified immunity issue should first consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts ... show [that] the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The plaintiff bears the burden of proof of proving that a constitutional violation occurred. *Henry v. Purnell*, 501 F.3d 374, 377-8 (4th Cir. 2007); *Crawford-El v. Britton*, 523 U.S. 574, 588-589 (1998). If, in the light most favorable to plaintiff, there has been no constitutional violation, then the analysis ends: the officer is entitled to qualified immunity. *Saucier, supra*.

However, if the facts could establish a constitutional violation, the Court must then analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions. *Id.*[3] In considering this second prong of the *Saucier* framework, the key issue is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). In order for an officer to lose the protection of qualified immunity, existing precedent at the time of the occurrence must show that it was "beyond debate" that the officer's specific actions violated the Constitution.

---

[3] In *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), the Supreme Court granted courts discretion over the order of application of the *Saucier* analysis, while recognizing that conducting the analysis in order is often beneficial.

*Mullenix v. Luna*, 136 S.Ct. 305, 308-09, 312 (2015) (per curiam); *Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (2018) (per curiam); *City and County of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765, 1774 (2015). Thus, the inquiry into whether the right was clearly established *must* "be undertaken in light of the specific context of the case" and "not as a broad general proposition ...." *Saucier, supra*. Also, "[b]ecause the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes, supra; Meyers v. Baltimore County, Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

Officers are entitled to qualified immunity "if a reasonable officer possessing the same information *could have believed* that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis added). The "safe harbor" of qualified immunity "ensures that officers will not be liable for bad guesses in gray areas but only for transgressing bright lines." *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000) (cleaned up); *see also Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). *See Hill v. Crum*, 727 F.3d 312, 321-22 (4th Cir. 2013); *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). Thus, an officer will be entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing" violated the Constitution. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). An inquiry under the qualified immunity analysis must be particularized and fact specific. *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). In cases such as the instant case, "in which the result depends very much" on the specific factual scenario, the officers will be entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S.Ct. at 1153 (quoting *Mullenix*, 136 S.Ct. at 309).

**B. Defendants Did Not Violate Plaintiff's Constitutional Rights.**

As to the first prong of the *Saucier* framework, the record is clear that Plaintiff's constitutional rights were not violated when he chose to return to general population housing. First, after repeatedly being asked for information on Plaintiff's alleged threats, Plaintiff refused to provide the names of the offenders who threatened him and knew that information was vital to ensuring his safety. *See* App. Ex. 2, White Declaration, at ¶ 13-15. Second, the record is clear that Defendants did not force Plaintiff "to sign off protective housing." To the contrary, the FCC gave Plaintiff the option to stay in RHAP until there was space available in a different correctional institution for him to move. *See* App. Ex. 2, White Declaration, at ¶ 13. Plaintiff instead chose to return to the general population housing, although he was informed his safety could not be ensured with only a vaguely alleged threat. *See* App. Ex. 2, White Declaration, at ¶ 21. Plaintiff's constitutional rights were not violated when he chose to return to the general population housing.

### C. Even if Plaintiff's Rights Were Violated, Defendants Could Have Reasonably Believed Their Conduct Was Lawful.

As to the second prong of the *Saucier* framework, the specific facts of the present case show that Defendants could have reasonably believed that their conduct was lawful. Once Plaintiff submitted a request for PC, he was immediately placed into RHAP while Defendants conducted their investigation. *See* App. Ex. 7, Control History, at p. 3. Defendants continued to follow-up with Plaintiff after he wrote a letter acknowledging his safety concerns. *See* App. Ex. 4, Letter, at p. 1-2. Defendants explained to Plaintiff that without knowing exactly which offenders were threatening him, there was no reasonable way to separate or protect Plaintiff in general population housing. Defendants allowed Plaintiff to use his own discretion to determine whether he wanted to remain in RHAP, cooperate by disclosing the names of the offenders threatening him, or to return to general population housing. *See* App. Ex. 2, White Declaration, at ¶ 15. Defendants acted

10

based off Plaintiff's decision. A reasonable officer possessing the same information as Defendants could have reasonably believed his conduct was lawful.

### D. Even Assuming Arguendo that Defendants Failed to Protect Plaintiff from Being Assaulted, Plaintiff Has Not Forecasted Evidence Demonstrating that Defendants Acted with A Sufficiently Culpable State of Mind.

Even if Defendants failed to protect Plaintiff from the assault as Plaintiff alleges (which they did not), Plaintiff cannot prevail on his failure-to-protect claim because he has not demonstrated that Defendants acted intentionally — or even knowingly. Under the specific facts of this case, it cannot be said that "every reasonable official" would have understood that providing Plaintiff with two housing options and ultimately abiding by his signed request to return to the general population housing would be a violation of his rights. *See* App. Ex. 6, Request for Protective Custody, at ¶ 2; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). Plaintiff failed to provide any evidence to suggest Defendants or any "reasonable official" could have protected Plaintiff from a surprise attack when Plaintiff failed to tell the officers (1) the name of the offender allegedly threatening Plaintiff, (2) where that individual was housed, or (3) why he believed there was a threat. There is no evidence that Defendants knew of a viable threat, other than Plaintiff's vague statements that he was at risk. *See Danser* 772 F.3d at 350 ("[b]ecause the record lacks any evidence that Boyd knew that Gustin posed a particular danger to Danser, the record as a matter of law fails to show that Boyd must have appreciated that his act of leaving Danser and Gustin together in an unsupervised area created an excessive risk to Danser's safety."). Additionally, Plaintiff ultimately signed statements agreeing to return to general population and that he would not hold the State responsible for any special protective needs. *See* App. Ex. 6, Request for Protective Custody, at ¶ 3. Accordingly, no reasonable officer could have determined that there was a viable threat.

11

Moreover, an inmate must prove that the alleged conditions were intentionally imposed. *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). The intentionality requirement "spring[s] from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment[.]'" *Id.* To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily, yet they fail to do so." *Brown v. N.C. Dep't Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quotation omitted).

Plaintiff has neither provided nor forecasted any evidence showing that he suffered any harm or punishment that was intentionally imposed. Instead, Plaintiff has merely filed a complaint with "bald, conclusory claims [which] do not plausibly allege either 1) that defendants knew of, but disregarded, a substantial risk of serious harm to plaintiff, or 2) that defendants acted with a sufficiently culpable state of mind required for a viable deliberate-indifference claim." *Byrd v. McLeod*, No. 5:22-CT-03134-M, 2023 WL 1797906, at *4 (E.D.N.C. Feb. 7, 2023); *Shakka v. Smith* 71 F.3d 162, 166 (4th Cir. 1995). Besides allegations in Plaintiff's Complaint, there is no evidence in grievance records substantiating Plaintiff's claim that Defendants deprived Plaintiff of his constitutional rights. *See Coombs v. Lewis*, 2014 U.S. Dist. LEXIS 116570, at *9 ("the nonmoving party may not rest on the allegations or denials in its pleading"). To the contrary, all existing evidence demonstrate that Defendants were attentive to Plaintiff's requests for PC and concerns for his safety. *See Johnson*, 2021 WL 4708094, at *9 (explaining that conclusory arguments or assertions which are "blatantly contradicted by the record" are insufficient overcome summary judgment) *See* App. Ex. 4, Letter, at p. 1-2.

12

Because Plaintiff has not forecasted any evidence that Defendants failed to address his safety concerns, much less evidence demonstrating that Defendants actions or inactions led to Plaintiff's assault, Plaintiff's claims must fail as a matter of law.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE 42 U.S.C. 1983 CLAIMS BROUGHT AGAINST THEM IN THEIR OFFICIAL CAPACITIES

Plaintiff sued all Defendants in their official capacities. (*See* Compl. § IV.) An official capacity claim is a suit against the entity which an individual represents—here, Plaintiff's official capacity claims constitute a claim against the North Carolina Department of Adult Correction, in connection with its oversight responsibility for Bertie Correctional. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding that an "official-capacity suit is . . . treated as a suit against the entity" for which the officer serves).

First, since Plaintiff cannot demonstrate that any underlying constitutional violation occurred (as described in the previous section), his official-capacity claims cannot survive either. It is well established that a municipality cannot be held liable under Section 1983 where there has been no underlying constitutional violation. *See Stevenson v. Martin County Board of Education*, 3 Fed. App'x 25, *33 (4th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990). Since Plaintiff cannot show any violation of his constitutional rights, Plaintiff's official-capacity claims must fail.

Next, it is improper for a plaintiff to name more than one defendant in its official capacity in connection with Section 1983 claims made against a single entity. Where (as here) two or more defendants are named in their official capacities in connection with a single entity, the redundant claims must be dismissed. *See Jones v. Houston*, 2010 WL 3835147, *14 n. 3 (E.D.N.C. Sept. 28, 2010) (citing *Boyd* and stating that "[a] claim against a sheriff and his deputy in their official

capacities is really one claim against the office of the sheriff."); *see also Wilcoxson v. City of Raleigh*, No. 5:13-CV-732-FL, 2014 U.S. Dist. LEXIS 109689, at *16–17 (E.D.N.C. July 18, 2014) (dismissing redundant claims, citing *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004)); *accord Hatley v. Bowden*, No. 5:13-CV-765-FL, 2014 U.S. Dist. LEXIS 28173, 2014 WL 860538, at *2 n.4 (E.D.N.C. Mar. 5, 2014); *Hicks v. Halifax Cty. Bd. of Educ.,* 93 F. Supp. 2d 649, 667–68 (E.D.N.C. 1999) (dismissing defendants since it was "unnecessary for plaintiff to proceed against both the officials in their official capacities and the [entity] under *Kentucky* and *Monell*").

Additionally, under *Monell*, Plaintiff cannot prevail on an official-capacity claim unless he can forecast evidence that a constitutional violation was caused by an official policy, custom, or practice. *Collins v. City of Harker Heights*, 503 U.S. 115, 120-121 (1992) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978)). In other words, *respondeat superior* may not serve as the basis for imposing section 1983 liability on a governmental entity. *Collins*, 503 U.S. at 121, 112. Instead, governmental liability attaches only when "execution of a government's policy or custom, whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 435 U.S. at 694. "Thus, not only must there be some degree of 'fault' on the part of the [governmental entity] in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985).

Here, Plaintiff cannot demonstrate anything indicating a causal link between any official policy, custom, or practice and a violation of his rights. Instead, Defendants have submitted policy documents and evidence demonstrating that Bertie Correctional has constitutionally adequate

14

grievance, PC, and disciplinary policies in place, and there is nothing in the record demonstrating any official policy which is violative of the U.S. Constitution.

Consequently, since there is no underlying constitutional violation as described *supra* Section III(A), and Plaintiff cannot meet the standards in *Monell* to set forth an unconstitutional policy, custom, or practice, the Section 1983 claims against Defendants in their official capacities should be dismissed as a matter of law.

## CONCLUSION

For the reasons and authorities cited in this memorandum of law, Defendants respectfully requests that the Court grant their Amended Motion for Summary Judgment on Plaintiff's failure-to-protect claim.

Respectfully submitted, this the 1st day of August, 2025.

> */s/ Caitlin T. Augerson*
> Caitlin T. Augerson, N.C. State Bar No. 57811
> **WOMBLE BOND DICKINSON (US) LLP**
> One West Fourth Street
> Winston-Salem, NC 27101
> Telephone: (336) 721-3600
> Facsimile: (336) 721-3660
> Email: Caitlin.Augerson@wbd-us.com
>
> *Attorneys for Defendants John M. Sapper, Victor Locklear, and Patricia White*

## CERTIFICATE OF SERVICE

This is to certify that on August 1, 2025, a copy of the foregoing **DEFENDANTS JOHN M. SAPPER, VICTOR LOCKLEAR, AND PATRICIA WHITE'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using CM/ECF system.

It is hereby further certified that on August 1, 2025, a copy of the foregoing **DEFENDANTS JOHN M. SAPPER, VICTOR LOCKLEAR, AND PATRICIA WHITE'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR SUMMARY JUDGMENT** was served by U.S. First-Class Mail on the following non-CM/ECF participant:

Kadeem Kirk
1423517
Mountain View Correctional Institution
545 Amity Park Road
Spruce Pine, NC 28777
*Pro se* Plaintiff

/s/ *Caitlin T. Augerson*
Caitlin T. Augerson, N.C. State Bar No. 57811
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Caitlin.Augerson@wbd-us.com

*Attorneys for Defendants John M. Sapper, Victor Locklear, and Patricia White*

16